JAMES A. SEDDON, Appellant, v. HOLBROOK-BLACKWELDER REAL ESTATE TRUST CO. et al., Respondents.

**St. Louis Court of Appeals, December 14, 1909.**

**APPELLATE PRACTICE: Equity: Findings by Trial Court.** While in an equity case, the appellate court is not bound by the findings of the trial court, such findings are always very persuasive and will not be disturbed on slight or doubtful grounds.

Appeal from St. Louis City Circuit Court.—*Hon. Matt. G. Reynolds,* Judge.

AFFIRMED.

*J. L. Hornsby* and *Allen, Latham & Young* for appellant.

*E. W. Banister* for respondent.

REYNOLDS, P. J.—This is a suit to enjoin the defendants from using or disposing of, and requiring them to deliver up to plaintiff, certain plans, drawings and specifications made and delivered by plaintiff to defendants under the terms of a written contract looking to the execution of a scheme originated by plaintiff for the construction of a dam, canal and power plant on the Mississippi River, St. Louis. The statement of the pleadings prepared by counsel for appellant is as follows:

"Plaintiff's petition states, in substance, that plaintiff originated a scheme for erecting across the Mississippi river, near the Chain of Rocks, at St. Louis, a dam with necessary embankments and a ship canal and power plant; that on October 18, 1904, plaintiff entered into a written contract with Holbrook-Blackwelder Real Estate Trust Co., one of the defendants herein, by the terms of which the trust company undertook to organize a corporation for the promoting of plaintiff's scheme, and $4900 was to be paid in cash into the treasury of the company to be used in preparing working plans and specifications and details for the dam, etc., and necessary engineering work incident to the proposition; that the four directors of the corporation should be plaintiff and defendants Holbrook, Blackwelder and Taussig; that when the corporation was formed and the $4900 paid in, plaintiff should transfer to the corporation his scheme, invention and all patents pertaining thereto, which he might have, in consideration of $5100 of the capital stock of the company, of which $2500 should be issued to plaintiff, $1300 to the trust company, and $1300 to defendant Taussig; that when the corporation had been formed and the scheme assigned, plaintiff should then proceed to prepare working plans, specifications and details, and all expenses incident thereto should be paid by this corporation, known as the promoting company, which expenses should not exceed $4900; that plaintiff should receive for his services in this work $1000, of which $500 should be paid when

the corporation was organized, and the $4900 paid in to the company, and plaintiff should receive the other $500 when the plans were completed; that plaintiff should, when the promoting company was formed and the $4900 paid in, join the promoting company in the execution of a contract whereby it would be agreed that when the plans had been prepared, the promoting company should take bids for the construction of the dam, canal and power plant, and after the bids had been received, the promoting company would incorporate another corporation to be known as the power company, which latter corporation should undertake to obtain from the United States Government permission to construct the dam, canal and power plant, and would further undertake to provide means wherewith to construct the same; that when this power company had been incorporated, the promoting company should transfer to it, the terms to be agreed, said scheme for constructing the dam, canal and power plant, and all other property of the promoting company, upon the express agreement that plaintiff be employed as chief engineer of the power company, on a salary of $500 per month from the day of the transfer to the power company until the power company should get authority to construct the dam, and from that time to the completion of the work, at the rate of $1000 per month; that as soon as all of the capital stock of the promoting company is issued the $5100 of said stock issued in consideration of plaintiff's scheme as aforesaid shall be cancelled and reissued in the name of the trust company as trustee under a voting trust agreement; that in case the trust company failed for thirty days after the date of said contract to secure subscriptions to the amount of $4900 in cash, or should fail to incorporate the promoting company, then said contract should be null and void; that later, and on November 5, 1904, plaintiff made a supplementary agreement with the trust company whereby, of the $2500 of the stock to which he

was entitled under the original agreement, $833.33 should be issued to the trust company for use by it in enlisting additional persons in the enterprise, but the other terms of the original agreement to remain in force, · except that the time for carrying out the agreement should be extended to December 1, 1904.

"The petition further states that the trust company represented to plaintiff that the $4900 of the promoting company stock had been subscribed and paid in in cash, and that on December 24, 1904, plaintiff, relying on said representations, executed jointly with defendants Holbrook, Blackwelder and Taussig and others, articles of association for the formation of a corporation under the laws of the State of Missouri, to be known as the Hydraulic Power, Bridge & Construction Company, with a capital of $10,000, in which articles of association it was stated that the capital stock was fully paid in cash, and in the hands of the persons signing the articles of association; that when plaintiff signed said articles of association, he was informed by defendant Holbrook, who was also president of the trust company, that said sum of $4900 in cash was actually in the hands of said Holbrook; that plaintiff then proposed and intended to convey to said corporation thus organized, the property belonging to him as provided and described in said written contract in payment of the $5100 of stock in said corporation on the delivery to him of the shares, as agreed, for that amount of said capital stock; that the articles of association of said corporation were duly recorded and a certificate of incorporation was issued by the Secretary of State of Missouri; that after the execution of said written contract, and for the purpose of enabling them to carry out the same, he delivered to defendants a preliminary report in writing of general plans and documents bearing on the subject; that afterwards relying on the statements of said trust company and Holbrook that the $4900 had been paid in cash,

146 App.—9

plaintiff proceeded to carry out on his part the written agreement, and in pursuance thereof did perform services in making working plans, specifications and details for a dam, power plant and lock canal, as provided for in said written contract, and delivered the same to defendants; that all said papers, plans, specifications, reports and documents are now in the possession of the defendants, but are the sole and exclusive property of plaintiff; that plaintiff is now informed that at the time the articles of association of said promoting company were executed and filed, said $4900 constituting the cash portion of the capital stock of said company, and which was to be raised by said trust company, under said written contract, had not been paid in cash, and was not in the hands of the parties to said articles of association, and that no part of said $4900 has ever been paid by said subscribers to said articles of association; that plaintiff believing that the $4900 had been paid in cash, immediately upon the issuance of the certificate of incorporation, offered to assign to the promoting company his scheme for the construction of the dam, etc., upon the delivery of the $5100 of capital stock as in said written agreement provided, but said promoting company failed and refused to deliver the said stock, and has never delivered the same; that said promoting company has failed to pay to plaintiff the $500 due upon the incorporation of said company, and that said $500 has never been paid to plaintiff; that plaintiff, believing that the $4900 had been paid in cash to defendants Holbrook and the trust company, offered to enter into a written contract with the promoting company, agreeing to obligate themselves to keep the agreement mentioned in said original written contract, but said promoting company has failed and refused to join plaintiff in the execution of said new contract; that defendants have threatened to use and dispose of the plans, specifications, details, preliminary report and other documents belonging to plain-

tiff, and by him delivered to defendants as above mentioned, and also threatened to use, develop and dispose of the scheme or plan described in the written contract to the irreparable injury of plaintiff. Plaintiff asks that the written contract between him and the trust company be cancelled and declared void and for naught held, and that the defendants be restrained and enjoined from using, transferring or disposing of said property of plaintiff in their possession, and that defendants be required to deliver and surrender up the same to plaintiff.

"Defendants in their answer admit the execution of the written contract mentioned in plaintiff's petition, but deny that defendants or any of them represented to plaintiff that the $4900 had been subscribed and paid in cash for the capital stock of the promoting company. The answer further admits the execution of the articles of association, but alleges that plaintiff knew that the $4900 had not been paid into the hands of the directors of the corporation, but denies generally all the other allegations contained in the petition. By way of further defense the answer alleges that when plaintiff signed the articles of association of the promoting company, he knew defendants had not sold $4900 of stock of the corporation as contemplated by the written contract, and knew that no part of this amount had been paid into the hands of the board of directors. The answer further states that at the time of the signing of the articles of association, the written contract between plaintiff and the trust company was modified so that it was then agreed between the parties to said contract that the proposed corporation should be formed without waiting for the trust company to sell the $4900 of stock, and that plaintiff should proceed with the work on the plans and specifications, and that the trust company should advance for the new company such reasonable sums of money as should be required to produce said plans, and that plaintiff should each month submit to the trust company an account of the moneys expended

by him in said work, and that the promoting company should not be required to pay plaintiff at the time of the incorporation the $500 provided for in the written contract, but that plaintiff should wait thereafter until the promoting company had received sufficient money from the proceeds of the sale of the stock wherewith to pay the same; that in pursuance of this parol modification of the contract, the promoting company was incorporated with a capital stock of $10,000, consisting of one hundred shares, and that defendant Holbrook subscribed for thirty-four and one-half shares, Taussig for thirteen shares, Blackwelder for thirty shares, plaintiff for sixteen and two-thirds shares, and the balance by other persons, and that Holbrook, Taussig, Blackwelder and Seddon became the first board of directors; that all of these parties understood and agreed that the company was formed to acquire of plaintiff his plans or scheme for building the dam, bridge and power plant, and that as soon as the corporation was formed, plaintiff should transfer to it said scheme in consideration of fifty-one shares of the capital stock; that the fifty-one shares were to be divided as agreed in the written contract, and that the other forty-nine shares should be sold to provide money for preparing the plans, etc., and that all of the parties knew that the forty-nine shares had not then been sold, and that $4900 was not in the hands of the first board of directors; that after the incorporation, and on December 29, 1904, a meeting of the stockholders of the promoting company was held in St. Louis, all being present; plaintiff was chosen secretary of the meeting, and on the same day a meeting of the board of directors of the company was held in St. Louis, all the directors being present, and at this meeting, plaintiff offered to sell to the company his scheme and plan for $5100; that the proposal was accepted, and all the directors signed the minutes, and that this action was taken in pursuance of the contract then existing between plaintiff and defendant trust company; that it was not intended

that the company should pay plaintiff $5100; that at this meeting of the board of directors, the officers were directed to issue certificates of stock to the stockholders, and a certificate was made out for plaintiff for sixteen and two-thirds shares of stock, and it has ever since been held by the secretary of the company subject to plaintiff's order; that after the meeting of the stockholders and of directors, the company had a written contract prepared to be executed by plaintiff, and the company, pursuant to the contract between plaintiff and the trust company, delivered the same to plaintiff for examination and execution, and plaintiff has never returned the same to said company or to defendants, nor has he requested the company to execute the same; that shortly after the meeting of the stockholders, plaintiff and the trust company agreed that plaintiff should go to Chicago and proceed with the work of preparing the plans, etc., and should send monthly statements of his expenditures, and that the trust company would pay these accounts to a reasonable amount for said promoting company, and that as previously agreed, plaintiff would waive the payment of the $500 provided for in the original contract until sufficient stock of the promoting company was sold by the defendants to provide money to pay him; that pursuant to this agreement, plaintiff returned to Chicago, proceeded with the work on the plans, and from time to time sent to the promoting company plans and drawings pertaining to said work, and also sent bills and statements of expenses incurred in preparing said plans, which bills were paid by said trust company advancing for said promoting company the money necessary therefor, and that said trust company paid in this way items aggregating $677.68; that the statements of account were made by plaintiff against the promoting company, and the amounts were all paid by defendant trust company; that said trust company also paid $116.90 expenses incident to the incorporating of the promoting company; that the amounts paid by

defendant trust company represented all the costs of producing the plans, etc., made by plaintiff since incorporation of the promoting company; that the plans, specifications and other drawings made by plaintiff, and part of which had been furnished defendant promoting company are not complete plans of said work; that much additional work remains to be done in order to complete the same; that the plaintiff has retained the original drawings, and only blue prints of said drawings have been furnished defendant promoting company; that until September 7, 1905, defendants had no reason to suppose that plaintiff was dissatisfied with the steps which had been taken in the enterprise, or that plaintiff would not continue with the work of preparing said plans, etc.; that on September 7, 1905, plaintiff determined to discontinue the performance of his said contract, and to associate himself with other persons in the prosecution of his said scheme, and to deprive defendants of said plan and scheme, and for that purpose the plaintiff refuses to carry out his contract, and that plaintiff is seeking thereby to abrogate his contract, in which case defendants will suffer great loss.

"To this answer the plaintiff filed a reply denying the allegations thereof."

On the filing of the petition and on application of plaintiff, the circuit court issued a temporary injunction enjoining defendants from using, exhibiting, transferring or in any way disposing of the preliminary report in writing with general plans and documents bearing on the object the working plans, specifications and details for a dam, power plant and lock, and the prospectus for a waterway and power development on the upper Illinois and Des Plaines rivers, until further order of the court, plaintiff giving the bond required by the court.

At the trial of the case on final hearing, the only oral testimony on behalf of plaintiff was that given by

himself. In addition to this plaintiff introduced the contract of date October 18, 1904, set out in the petition, and the supplemental agreement of November 5, 1904, as well as certain correspondence between plaintiff and the defendant trust company and defendant Taussig, showing the several demands made by plaintiff for the $500, and the receipt by plaintiff of the moneys expended by him in preparing the plans, which money had been advanced to him by the trust company. We give the testimony of plaintiff as abstracted by his counsel as follows:

"Plaintiff on his own behalf testified that he was a civil engineer of long experience, a resident of Chicago; that he was introduced to Mr. Holbrook by Mr. Taussig about the year 1900; that in pursuance of the written contract mentioned in the petition, he made plans and specifications for the proposed dam and power plant, and delivered these plans and specifications to defendants Holbrook and Hydraulic Power, Bridge & Construction Co., otherwise known as the promoting company; that he received money of defendants with which to pay the expenses of employing a draftsman, cost of tracing paper, expressage and typewriting; that he has never received the $500 due him as per the written contract; that on September 7, 1905, he notified defendant Holbrook by telegram that he considered the contract of October, 1904, cancelled for failure of the Holbrook-Blackwelder R. E. Trust Company and the other defendants to perform their part, in failing to pay him the $500, in failing to give him stock in the promoting company, in failing to execute the contract of the promoting company with him, and in failing to pay the expenses which he incurred in the work in such way as to enable him to prosecute the work, that is, they were delayed for months at a time in the payment of these expenses; that later Holbrook told him that he intended to go ahead with the project independently of plaintiff, leaving him entirely out; that plaintiff has never re-

ceived any of the capital stock of the promoting company; that he with his attorney and Mr. Banister, attorney for defendant Holbrook-Blackwelder R. E. Trust Company, formulated a contract to be entered into between plaintiff and the promoting company in pursuance of the terms of the written contract of October 18, 1904, and that after trying for a day to get defendant Holbrook to sign this new contract in duplicate with plaintiff, plaintiff signed a copy thereof, and left the same with his attorney, Judge Seddon, and then returned to his home in Chicago; that before leaving St. Louis, he told Mr. Banister that when the promoting company signed its copy, he, Banister, and Judge Seddon could exchange copies of the contract thus executed, and that it was only the May following that he learned that the promoting company had never executed its copy of this contract, or called upon Judge Seddon for the executed copy; that he also left with Judge Seddon a written assignment to the promoting company of his scheme as provided for in the original contract to be delivered to the promoting company on demand.

"On cross-examination plaintiff testified that when he sent the telegram to Holbrook in September, 1905, he was in negotiation with other parties in regard to his scheme; that his last communication with any of the defendants was in July, 1905, at which time he received a check from the defendant trust company in payment of expenses previously incurred in the work on the plans; that he did no work on the plans after that time; that the plans made by him and delivered to defendants are not complete, though they are completed in greater part; that when he received the last check from defendant trust company in July, 1905, he concluded not to continue the work further unless he was paid the $500 due him under the contract; that he had not sent any bill for the $500 for some time prior to July, 1905, but had sent bills, and made numerous demands by letter for the $500 prior to that date; that

he did not notify defendants in July that he intended going no further in the matter; that the plans which he made were sufficient to enable estimates of the cost of the work to be made by contractors, and this, according to his understanding, was what defendants Holbrook and Taussig had agreed to do, and that after obtaining these estimates of the costs, they were to present the matter to men of means with a view to having them finance the scheme, and this defendants had failed to do, although plaintiff wrote asking them especially to do this; that at the time the articles of association of the promoting company were signed, plaintiff thought the $4900 was in the hands of Holbrook and the trust company; that defendants Taussig and Holbrook told him prior to the incorporation of the promoting company that they had men who would put up the $4900 as soon as the corporation was formed; that plaintiff at no time made any verbal modification of the written contract of October 18, 1904, and did not waive the payment of the $500 payable to him under that contract; that immediately after his return to Chicago in December, 1904, he sent a bill to defendant Holbrook for the $500 due him; that he then went to work on the plans and devoted all of his time to this work until July, 1905."

Counsel for respondents, defendants below, accept this as a correct abstract of the testimony, as far as it goes, supplementing it, however, by giving some of the testimony somewhat more at length. It is as follows as abstracted by counsel:

"James A. Seddon, on cross-examination, admitted that on September 7, 1905, he sent from New York to W. J. Holbrook, St. Louis, telegram as follows: 'Parties offer me contract in place of yours; claims your contract broken. I advise conference with you. This is to you alone; if you want it, notify me at Surety Building, Chicago.'

"Also that on January 18, 1905, that he wrote to W. J. Holbrook letter in which he said, among other things:

" 'There is a good deal to do to get all this matter in final shape, and I am going on with it at the smallest expense possible until you are ready to push it. Please let me know what are your wishes in the matter, and I will shape the work to suit them.'

"Q. Now, if you understood that this forty-nine hundred dollars was in the hands of this company ready to go on with this work, why did you write that letter? Why did you say that you understood from Mr. Taussig the company was now in shape to go to work? A. I wanted my money.

"Q. Why did you say down here, 'there is a great deal to do to get all this matter in final shape and going on with it at smallest expense until you are ready to push it.' What did you mean by that? A. Just what I said.

"Q. What? A. I say just what I stated.

"Q. Now, Mr. Seddon, you received this letter on the first of February, marked Exhibit F, from the Holbrook-Blackwelder Co., written by Mr. Holbrook, 'in reference to the item of five hundred dollars in your bill of January 1st—would say that Mr. Taussig and myself have not yet gotten in any money for treasury stock, but we are now giving attention to the matter and hope to have some in a short time when we will forward the five hundred dollars to you in accordance with our understanding,' what did you understand by that? A. I understood that Mr. Holbrook did not want to send me that money right then for some reason.

"Witness acknowledged writing letter dated Chicago, February 3, 1905, as follows:

" 'Yours with check for $170.46 received and I enclose signed receipt as requested.

" 'I am now working out the method and plans of the rock fill in the St. Louis project, and writing the specifications for it. As soon as I am through that I will take up the prospectus you want. I can then give it the

most of my attention without interrupting the work on the St. Louis project.

" 'The waterway from Chicago to St. Louis is a big proposition, but if you can keep me going at it, I can make its engineering very solid in time to go up to the next Congress.'

"Witness admitted that he received the following letter from Holbrook, dated September 11, 1905:

" 'I returned home Saturday afternoon, and to-day Mr. Blackwelder handed me your telegram from New York, of September 7th, also his reply to same.

" 'Mr. Taussig also returned Sunday, and is now in my office, and we have been talking over the deep water project. Of course, you understand, I don't know why you even intimate that our contract has been broken, as everything has been done with your consent.

" 'I wish to say that I have given this matter a great deal of consideration and have been laying the plans to make an aggressive campaign this fall, and effect such an organization as we believe we can carry through the bills in Congress. Before going, however, any further in this matter, you should be present, so that we could have a conference as to the completion of plans and policy which we wish to formulate.

" 'Please wire us what day you can be here, and trust it will be immediately, as the enterprise will require an endless amount of work, as it is such a large and far-reaching project in its value to the Mississippi Valley country, as well as to the interested parties.'

"And that he made no reply to this letter because at that time he had broken off with Mr. Holbrook.

"Defendant offered in evidence checks payable to James A. Seddon, drawn by Holbrook-Blackwelder Real Estate Trust Company as follows: February 2, 1905, $170.46; April 4, 1905, $142.78; May 6, 1905, $44.59; May 31, 1905, $136.93; June 2, 1905, $68.55; July 5, 1905, $89.37.

"And the witness acknowledged that he received these various sums of money, and that they were on account of the work on the plans in question, also that he received by draft on May 4th, $125.00.

" 'The Court: All bills were rendered and all requests made for money on account of these expenses, everything was paid, except five hundred dollars, is that true? A. Yes.

" 'Q. These various sums of money which were paid, as you have testified, represent all the expenses in producing these plans aside from your own work, do they not? A. And office rent and all my own work.

" 'Q. You have an office in the city of Chicago? A. Yes.

" 'Q. You had one before you undertook to draw these plans? A. Yes.

" 'Q. And you simply utilized your office for this work? A. Yes.' "

Defendants offered evidence as follows:

Hubert P. Taussig testified: "I have been a civil engineer for 34 years and have known the plaintiff for 20 years, or longer; I was present at the conference between Mr. Holbrook, Mr. Seddon and perhaps other parties in reference to this matter in December, 1904. The purpose of the meeting was to organize the bridge company. There was nothing said with reference to the stock having been sold or subscribed, excepting that I made the statement that there was one gentleman who was ready to pay in $1000, but I didn't want him to do that until all was subscribed.

"Mr. Holbrook made the remark that he would advance the necessary money to keep things moving. As near as I can remember it, Mr. Holbrook suggested at the time that we had better not invite people to buy this stock until we were further advanced, until we knew what we could do, or what we couldn't do. It resulted in him then stating that he would advance the money necessary to get up all the

plans, and Mr. Seddon acquiesced, and nothing was said that I remember as to his $500, but that the necessary moneys would be advanced to get up the plans. Mr. Seddon time and again said the time was not ripe to bring this matter to the attention of Congress or the Committee on Rivers and Harbors.

"Mr. Seddon spoke to me about his compensation in the early months or the beginning of this work and the purport or substance of the conversation was that nothing was done in the matter; it was just waived for the time being. He was going to waive that for the time being. I have examined these plans and specifications and I would say they are not complete and ready for the taking of bids and estimates for that work.

"Mr. Young: For estimates or bids? A. Either estimates or bids. I don't consider them complete plans by any means. With Mr. Seddon sitting along side of them and explaining, in addition to what I have seen in the specifications of the various parts, it might be possible for one to give an idea of the cost; but no contractor would execute a contract or guarantee to do the work for a stipulated sum of money under those specifications or plans.

"The Court: Mr. Taussig, I want to ask you a question with reference to these plans and specifications. Were they sufficiently complete to be used in estimating the cost of the construction and the working out of the scheme to be used in a prospectus or to be submitted to investors? A. No, sir; just enough to give a general idea of its construction. I didn't go into detail enough so as to get at the actual cost."

W. J. Holbrook testified: "I am president of the Holbrook-Blackwelder Real Estate Trust Company. I had a conference with Mr. Seddon in December, 1904, in my office. Mr. Seddon, Mr. Taussig and I were present. I told Mr. Seddon and Mr. Taussig that I didn't think it advisable to go on selling this stock that I contemplated selling at that time; that if these plans could be

gotten up not to have an expense account run too high. I was going to go on and advance money to the company. Mr. Seddon's contract provided for ninety days. He said by stringing out the work he could do it in a much cheaper way and it wouldn't cost near as much money. We didn't need those plans until the following fall for taking estimates and bids, and to go before Congress and get the people interested. During this intervening number of months he would go on and get these plans completed—get them up to a point ready for bids, so we could get estimates from some of the big contractors in New York and Chicago, and necessarily here, so we would know what that investment had got to stand in the way of expense. I said with that understanding, he not to have any profit out of this deal—I was putting up this money in order for him to put his scheme into tangible shape—I would advance that money to the company until we saw fit to sell the treasury stock, but not to pay his $500, which he consented to without any question, and I continued to do that monthly as his bills came in, and you notice in my letter of the first of February, I call his attention to the fact that we hadn't sold treasury stock to pay his $500, which was according to the understanding. I was surprised that he asked for the $500. We never executed the contract with Mr. Seddon. The idea was that Mr. Seddon was to execute that contract which you have displayed here, transfer his interest to the Hydraulic Power Company, transferring—I mean signing the voting trust agreement. He would sign that, and when we got ready to sell the stock, and did sell the stock, we would sign it and deliver it back to him. He delivered it to his attorney, as I understood, through you. When Judge Seddon had approved it he was to give it to you, so that you could give it to the parties. That protected me in paying out the money on this deal.

"Mr. Seddon was told distinctly at that time that the $4900 had not been paid in; I told him that and I told Mr. Taussig. I paid all the expense bills that were sent to us up to the time in July, when I left the city for my vacation. Mr. Seddon never did furnish complete plans, which he agreed to do. He never put those plans in shape. The work he was going to do in conjunction with Mr. Roach on these plans of the power plant and bridge structure never has been furnished to us, and that is one of the big items of expense in this bill. He was to furnish Mr. Roach information so that they could work together and furnish the plans to me. That is part of the expense of the proposition. Mr. Seddon as engineer of the company never notified me that they were ready to take bids at all on this proposition, nor that the specifications or the plans were ready.

"Mr. Seddon did not answer the last letter I sent him in which I asked for a conference. I had the interview with him in Chicago, which he has detailed substantially correct, to this extent, 'that he said he had other parties sometime before that who wanted to take up this deal, and he thought they could handle the deal better than we could,' and he wanted to break our contract, and I said, 'I am not willing to consider going in with other parties, but you mustn't consider this contract broken, because you have no grounds for it. If you do I shall hire some other engineer and go on with the work, because my contract stands good on this deal.' Mr. Roach was there and heard the conversation."

At the conclusion of the evidence, the court, having taken the cause under advisement, found for defendants, dissolved the temporary injunction and entered up a decree in favor of defendants. Plaintiff in due time filed a motion for new trial which was overruled, exception being duly saved, and afterwards brought the case to this court on appeal.

It will be observed by the foregoing statement that the case turns entirely upon the weight of the evidence and the credibility of the witnesses. Counsel on neither side submit any citations of authorities or legal propositions, it being argued on behalf of appellant that the testimony adduced clearly disproves defendants' theory that plaintiff had agreed to any modification of the written contract or that he had waived the payment to him of the $500 payable thereunder, counsel claiming that the alleged variation and rescission of the contract set up by defendants, confessedly being by parol, that the burthen of proof was on the defendants to establish this variation from the written contract and that this burden had not been sustained. On the other hand, counsel for the defendants maintain that by the preponderance of the evidence, both oral and documentary, the latter by correspondence, they have established their propositions, first, of the waiver of the payment of the five hundred dollars; second, of the full knowledge of the plaintiff of the fact that the forty-nine hundred dollars had not been paid in in cash and his acquiescence therein, and that the articles of association were signed by him with full knowledge that the forty-nine hundred dollars had not been paid in in cash and, lastly, that by a preponderance of the testimony in the case, they have shown that plaintiff himself was the one who had breached the contract and consequently that he is not entitled to the relief for which he prays. If these facts were found to be as alleged by counsel for defendants, if it was a fact that plaintiff knew of and acquiesced in the arrangement concerning the payment of the forty-nine hundred dollars on the capital stock, that is, that it was to be paid in as needed; if he waived the payment of the five hundred dollars; if he did not deliver plans on which bids could be taken, and if he himself abandoned the contract, he cannot recover. The trial court, finding for defendants, must have so concluded.

With all the testimony before us, the abstract of which as furnished by the respondents' counsel, we have set out in full, we see no reason to disturb that finding. The testimony was all given in the presence of the trial judge; he saw and heard the witnesses who testified. He is the sole judge of their credibility and best qualified to determine the weight to be given to their testimony. While in a case in equity, we are not bound by the finding of the trial judge on the weight of the evidence, that finding, for the reasons above given, is always very persuasive and will not be disturbed on slight or doubtful grounds. No such reason exists in this case. The judgment of the circuit court is affirmed. All concur.